ORIGINAL

FILED
U.S. DISTRICT COURT
2009 JUL 31 PM 1:39
CLERK_____
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| VIVIAN B. WALDEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 308-020 |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner of Social Security Administration, | ) ) | |
| | ) | |
| Defendant. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff appeals the decision of the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB") under the Social Security Act. Upon consideration of the briefs submitted by both parties, the record evidence, and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS**, pursuant to sentence four of 42 U.S.C. § 405(g), that the Commissioner's final decision be **REVERSED** and that the case be **REMANDED** to the Commissioner for further consideration in accordance with this opinion.

## I. BACKGROUND

Based on claims of disability dating back to March 30, 2003, Plaintiff applied for DIB

and SSI benefits in June, 2003.[1] Tr. ("R"), pp. 66, 736. The Social Security Administration denied Plaintiff's application and her request for reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). R. 54, 49. Plaintiff, who was represented by counsel, appeared and testified on her own behalf at a hearing conducted in July, 2005. R. 256. On March 30, 2006, the ALJ issued a partially favorable decision finding Plaintiff had been disabled from her alleged onset date of March 30, 2003 through November 1, 2004, but not thereafter. R. 13-23.

Applying the sequential process required by 20 CFR §§ 404.1520 and 416.920, the ALJ found:

1. At all times relevant to this decision, the claimant has not engaged in substantial gainful activity.

2. The claimant has had the following severe impairments: degenerative disc disease of the cervical spine, status post fusion; and degenerative joint disease/torn menisca of the bilateral knees, status post arthroscopic surgeries, 20 CFR §§ 404.1520(c) and 416.920(c).

3. At all times relevant to this decision, the period during which the claimant was disabled, the claimant did not have an impairment or combination of impairments that met or medically equaled an impairment listed in Appendix 1, Subpart P, Regulations No. 4.

4. At all times relevant to this decision, the claimant had the residual functional capacity to do less than a full range of sedentary work, and was unable to perform any work on a full-time sustained basis. The claimant was unable to perform past relevant work (20 CFR §§ 404.1565 and 416.965).

5. At all times relevant to this decision, there were no jobs that existed in

---

[1] Plaintiff's original application for DIB resulted in an unfavorable decision by the ALJ on December 7, 1998; the decision was not appealed. R. 38. Plaintiff then reapplied for DIB and filed her first application for SSI on May 7, 1999. Those applications resulted in an unfavorable decision, were upheld by the Appeals Council, and were not appealed any further. R. 39, 42, 758.

significant numbers in the national economy that the claimant could have performed (20 C.F.R. §§ 404.1560(c), 404.1566, 416.960(c), and 416.966). The claimant was under a disability, as defined by the Social Security Act, from March 30, 2003 through November 1, 2004 (20 CFR §§ 404.1594(b)(1) and 416.994(b)(1)(i)).

R. 13-20.

The ALJ then determined that Plaintiff's disability ceased on November 1, 2004 due to "medical improvement." R. 20. Following the sequential process set forth in 20 CFR §§ 404.1594(f) and 416.994(b)(5) for determining whether a disability has ceased, the ALJ found:

1. At all times relevant to this decision, the claimant has not engaged in any substantial gainful activity.

2. The claimant has not had an impairment or combination of impairments that meets or medically equals one of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR §§ 404.1594(f)(2) and 416.994(b)(5)(i)).

3. A medical improvement occurred as of November 1, 2004, the date the claimant's disability ended (20 CFR §§ 404.1594(b)(1) and 416.994(b)(1)(i)).

4. The medical improvement that occurred is related to the ability to work because the claimant no longer has an impairment or combination of impairments that meets or medically equals a listing (20 CFR §§ 404.1594(c)(3)(i) and 416.994(b)(2)(iv))A)).

5. As of November 1, 2004, the claimant continued to have a severe impairment or combination of impairments (20 CFR §§ 404.1594(f)(6) and 416.994(b)(5)(v)).

6. Beginning on November 1, 2004, the claimant has been unable to perform past relevant work (20 CFR §§ 404.1560(c), 404.1566, 416.960(c), and 416.966). Claimant's medical improvement related to work-related activities requires an assessment of the claimant's functional residual capacity ("RFC"). Beginning November 1, 2004, the claimant had the RFC to perform a full

range of sedentary work[2] and a limited range of light work[3] including the ability to lift and/or carry and push and/or pull 20 pounds occasionally and 10 pounds frequently; to sit for 1-2 hours continuously for a total of 8 hours in an 8-hour day; to walk and/or stand for 30 minutes continuously for a combined total of about 2 hours in an 8-hour day; but should avoid climbing ropes, ladders and scaffolds; should only occasionally climb ramps or stairs, or bend; and should avoid kneeling and crawling.

7. Beginning on November 1, 2004, the claimant has been able to perform a significant number of jobs in the national economy. The claimant's disability ended on November 1, 2004 (20 CFR §§ 404.1594(f)(8) and 416.994(b)(5)(vii)).[4]

---

[2] Sedentary work involves:

> lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 CFR § 404.1567(a) & 416.967(a).

[3] Light work involves:

> lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. . . . If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 CFR §§ 404.1567(b) & 416.967(b).

[4] The VE testified that Plaintiff would be able to "perform the requirements of representative of occupations such as surveillance system monitor, information clerk, and a cashier/ticket-taker." R. 22.

R. 20-23.

When the Appeals Council ("AC") denied Plaintiff's request for review, the Commissioner's decision was "final" for the purpose of judicial review under 42 U.S.C. § 405(g). Having exhausted her administrative remedies, Plaintiff filed this civil action in the United States District Court for the Southern District of Georgia requesting a reversal of that adverse decision. Plaintiff now argues that: (1) the AC failed to evaluate Plaintiff's rheumatoid arthritis, (2) the ALJ failed to evaluate Plaintiff's obesity, and (3) the ALJ improperly evaluated Plaintiff's credibility. See generally Pl.'s Br.

## II. STANDARD OF REVIEW

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence, Richardson v. Perales, 402 U.S. 389, 390 (1971); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); and (2) whether the Commissioner applied the correct legal standards. Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's. Cornelius, 936 F.2d at 1145. Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole record to determine whether substantial evidence supports each essential administrative finding. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991).

5

Substantial evidence is "more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at 1239). If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner even if the evidence preponderates in favor of the claimant. Id. Finally, the Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based upon substantial evidence. McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to his conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the Court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

## III. DISCUSSION

As noted above, Plaintiff argues: (1) the AC failed to evaluate new records submitted by Plaintiff concerning her rheumatoid arthritis, (2) the ALJ failed to evaluate Plaintiff's obesity, and (3) that the ALJ improperly evaluated Plaintiff's credibility. See generally Pl.'s Br. Concerning Plaintiff's credibility, Plaintiff maintains that the ALJ erred because he: (1) failed to consider Plaintiff's rheumatoid arthritis and obesity, (2) improperly relied on

Plaintiff's daily activities, (3) improperly relied on Dr. Tsai's report, and (4) failed to cite evidence of improvement in Plaintiff's knees. (Id.).

A. **Alleged Failure of the AC to Evaluate Plaintiff's Rheumatoid Arthritis**

Plaintiff argues that the AC failed to properly evaluate medical records concerning rheumatoid arthritis that had not previously been provided to the ALJ. Plaintiff maintains that the new medical records establish that she had rheumatoid arthritis and that the Commissioner should have considered her rheumatoid arthritis in conjunction with her other impairments. Pl.'s Br., pp. 5, 10. Plaintiff argues that these new records show that in January 2006, Plaintiff's then treating physician Dr. Samuel Palmer, diagnosed Plaintiff with rheumatoid arthritis. (Id.). Plaintiff maintains that the evidence of the diagnosis was presented to the AC; the AC acknowledged it had received the records, but "it said nothing about them." (Id. at 5-7). Plaintiff argues that the AC failed to evaluate the records; and thus, the Commissioner failed to make a specific and well articulated finding as to the effect of the combination of impairments and to decide whether the combined impairment caused Plaintiff to be disabled.[5] (Id. at 7).

The Commissioner counters that Plaintiff made no showing that she had rheumatoid arthritis in November 2004. Comm'r Br., p. 9. He claims that the only evidence of such is the January 2006 test; a test that was performed over a year after the date her disability had ended. (Id.). The Commissioner acknowledges that the new records were submitted to the

---

[5]Plaintiff argues that although she was not diagnosed with rheumatoid arthritis until January 2006, "it is likely she had has [rheumatoid arthritis] for a substantial time before then." Pl.'s Br., p. 5. Therefore, Plaintiff contends that this rheumatoid arthritis diagnosis is important to her credibility concerning her complaints of pain in her knee and wrist. (Id. at 6). In sum, these records address her complaints that the ALJ discredited.

7

AC; but he notes that the AC correctly found that the new information was an insufficient basis for changing the ALJ's decision. Comm'r Br., p. 9; R. 6. Furthermore, the Commissioner asserts that the new test does not, on its face, relate back to November 2004. (Id.).

The Court turns to Plaintiff's argument that the AC improperly disregarded the new test. Until recently, when presented with new evidence that was submitted to the AC, a reviewing court could only consider whether the new evidence necessitated remand under sentence six of § 405(g); it could not consider the new evidence in determining whether the Commissioner's final decision was supported by substantial evidence. Falge v. Apfel, 150 F.3d 1320, 1323 (11th Cir. 1998); Keeton v. Department of Health and Human Servs., 21 F.3d 1064, 1068 (11th Cir. 1994). Under that standard, a reviewing court could remand a case for consideration of new evidence only if the evidence was material and only if good cause existed for the claimant's failure to submit the evidence at the prior administrative proceeding. 42 U.S.C. § 405(g).

However, a recent decision by the Eleventh Circuit has attempted to clarify the analysis of Social Security cases where the plaintiff requests review of the ALJ's decision based on new evidence submitted to the AC, and the AC denies that request after reviewing the evidence. In Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253 (11th Cir. 2007), the Eleventh Circuit concluded that a sentence six remand is only proper "when new material evidence that was not incorporated into the administrative record for good cause" and "not presented to the Commissioner at any stage of the administrative process" is submitted to the district court. Id. at 1267 (citations omitted). The court went on to find that "evidence

properly presented to the Appeals Council has been considered by the Commissioner and is part of the administrative record." Id. at 1269. Thus, such evidence "can be the basis for only a sentence four remand, not a sentence six remand." Id. (citations omitted); see also Couch v. Astrue, 267 Fed. App'x 853, 857-58 (11th Cir. 2008) (finding that district court did not err in refusing to remand under sentence six because the evidence was not new evidence that the Commissioner failed to incorporate into the record). In sum, where a claimant properly presents new evidence for consideration by the AC and the AC denies the request for review after considering the new evidence submitted, the "substantial evidence" standard required by sentence four applies, and the Court must determine whether the new evidence demonstrates that the denial of benefits is erroneous because the decision is no longer supported by substantial evidence.

Here, the Court notes that the AC received the new records, and found that the new records did not provide a basis for changing the ALJ's opinion. R. 6. Thus, the question becomes not whether the AC disregarded the new evidence, but whether in light of the new evidence, the Commissioner's decision is supported by substantial evidence.

Plaintiff provided Dr. Palmer's records because he diagnosed Plaintiff with rheumatoid arthritis in January 2006, and Plaintiff argues that the AC should have evaluated Plaintiff's rheumatoid arthritis in conjunction with her other impairments. Plaintiff argues that the new evidence is relevant to the ALJ's determination because it would support Plaintiff's statement that "[s]ometimes I be real stiff if I sit a long period of time." Pl.'s Reply Br., p. 2, R. 780. Notably, however, Plaintiff does not point to any medical record that was before the ALJ that indicates that Plaintiff had been diagnosed with rheumatoid arthritis.

Indeed, as noted by the Commissioner, the record from the latter part of 2004, makes no mention of joint swelling or any other sign of rheumatoid arthritis. Comm'r Br., p. 9. The AC "must consider new, material, and chronologically relevant evidence and must review the case if the ALJ's action, findings, or conclusion is contrary to the weight of the evidence currently of record." Ingram, 496 F.3d at 1261. Although Dr. Palmer's records are new, they do not provide substantive information regarding Plaintiff's condition at the time of the ALJ's decision. Therefore, there was no basis for the AC to determine that the evidence was contrary to the ALJ's decision. As such, the AC did not err in determining that the ALJ's opinion concerning Plaintiff's rheumatoid arthritis in combination with her other impairments is supported by substantial evidence; and this case does not warrant remand on this issue.

### B. Failure to Evaluate Plaintiff's Obesity

Next, Plaintiff argues that the ALJ failed to evaluate Plaintiff's obesity. The medical records submitted in her administrative proceedings indicate that she is five feet and three inches tall and weighs between 244-250 pounds. R. 160, 188, 192, 195, 198, 204, 260. Her body mass index ("BMI") is approximately 42.5 to 46.4.[6] According to Social Security Ruling ("SSR") 02-1p, "[t]he Clinical Guidelines recognize three levels of obesity. Level I includes BMIs of 30.0-34.9. Level II includes BMIs of 35.0-39.9. Level III, termed "extreme" obesity and representing the greatest risk for developing obesity-related impairments, includes BMIs greater than or equal to 40." In this case, Plaintiff's BMI would

---

[6]BMI is calculated by dividing a person's weight, in kilograms, by the square of a person's height in meters. Plaintiff's counsel alerted the ALJ as to Plaintiff's BMI at the hearing. R. 761.

place her in the Level III, "extreme obesity" category.

The administrative record consistently reflects that Plaintiff is obese. R. 187, 188, 190, 192, 195, 198, 200, 204, 252, 260, 554. Nevertheless, the only mention of Plaintiff's obesity in the ALJ's opinion is his statement that, "Objective medical evidence confirms that [Plaintiff] is an obese smoker with degenerative joint disease and meniscal tears in both knees, for which surgeries were performed May 1, 2003 and September 8, 2003." R. 18.

SSR 02-1p stands for the proposition that because Plaintiff's weight fell within the applicable definition of obesity, her obesity should be considered, among other impairments, because it can cause further degradation of Plaintiff's physical capacity, especially in the presence of certain impairments. See SSR 02-1p.

SSR 02-1p recognizes that "[o]besity is a risk factor that increases an individual's chances of developing impairments in most body systems. It commonly leads to, and often complicates, chronic diseases of the cardiovascular, respiratory, and musculoskeletal system." Obesity may be considered a "severe" impairment when it limits an individual's physical or mental ability to do basic work activities. Such an assessment of severity is made on an individualized basis instead of through a body mass index guideline or descriptive term such as "morbid" or "extreme." SSR 02-1p. An ALJ should assess the effect that obesity has on exertional, postural, and social functions, as well as "the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment." Id. Furthermore, "[t]he combined effects of obesity with other impairments may be greater than might be expected without obesity." Id.

However, as with the general severity standard, a mere diagnosis of obesity does not

11

equate with a finding of severity. Wind v. Barnhart, 133 Fed. App'x 684, 690-91 (11th Cir. 2005) (ALJ correctly determined obesity non-severe because it did not "cause further degradation" of her residual functional capacity). A diagnosis or a mere showing of "a deviation from purely medical standards of bodily perfection or normality" is insufficient; instead, the claimant must show the effect of the impairment on her ability to work. Id. (citing McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986)). Similarly, Plaintiff's BMI is not determinative. See SSR 02-1p. Rather, the record must contain evidence demonstrating that Plaintiff's obesity affected her ability to perform the full range of sedentary or limited range of light work activities. Id.

Here, as noted above, the record contains numerous references that Plaintiff is obese. R. 187, 188, 190, 192, 195, 198, 200, 204, 252, 260, 554. Additionally, the medical records contain statements that Plaintiff needs to lose weight and that her problems are affected by her weight; the record provides, "This patient very definitely needs to lose weight, I think that's a lot of her problem[,]" and Plaintiff cannot, among other things, stand or walk because she is, among other things, obese. R. 260, 554. Additionally, Plaintiff's counsel addressed Plaintiff's obesity at the hearing before the ALJ, and explained that Plaintiff was obese, a level 3 on the BMI. R. 761.

The Commissioner argues that contrary to Plaintiff's assertion, the ALJ did consider Plaintiff's obesity because the ALJ relied on Dr. Tsai's opinion.[7] The Commissioner argues that Dr. Tsai expressly noted that Plaintiff was obese, and thus, "one might reasonably

---

[7]Dr. Tsai is a neurologist who examined Plaintiff in October 2005 and ordered an EMG and nerve conduction testing. R. 716-18, 724.

assume that Dr. Tsai took this condition into account when assessing [P]laintiff's limitations due to her medical problems." Comm'r Br., p. 9. The Commissioner argues that no other examining or treating physician ever indicated that such a condition made her unable to work, and that there is "simply no medical evidence that proves [P]laintiff's obesity (combined with her other impairments) caused a greater degree of limitation that the vocational expert was asked to take into account." (Id. at 9-10).

The problem with the Commissioner's argument is that, first, there are numerous entries in the medical record stating that Plaintiff is obese. In fact, two of those entries state that Plaintiff's obesity "is a lot of her problem," or she cannot walk because of it. Second, even if the medical evidence did not indicate that her obesity exacerbated any of her impairments, the ALJ must make that finding. To the extent the Commissioner argues that "one might reasonably assume" that Dr. Tsai took Plaintiff's obesity into consideration, as noted by Plaintiff, "perhaps one might [assume obesity was considered], if not for Dr. Tsai's statement that Plaintiff had 'no neurological disability.'"[8] Pl.'s Reply Br., p. 3. In any event, despite the Commissioner's apparent attempt to convince the Court that the ALJ considered Plaintiff's obesity, and/or that the medical record does not reflect that Plaintiff's obesity exacerbated her impairments, this post-hoc analysis from the Commissioner is not reflected in the ALJ's opinion. As pointed out by Plaintiff, the question is not whether a one-time consultative doctor took Plaintiff's obesity into account, it is whether the ALJ did so. Pl.'s Reply Br., p. 3. Indeed, as the Eleventh Circuit noted in Wind, "However, as the ALJ

---

[8]Dr. Tsai reported, "Patient with neck and arm pain. Normal neurological evaluation. No neurological disability." R. 717.

explained in his decision, the record contains no evidence showing that Wind's obesity affected her ability to perform medium work-related activities." Wind, 133 Fed. App'x at 690-91 (emphasis added). In the instant case, the ALJ made no such determination.

The Court must review the decision as delivered by the ALJ, but here the Court is unable to perform any meaningful judicial review because the ALJ simply did not make his thought processes known in his decision. See Hudson v. Heckler, 755 F. 2d 781, 786 (11th Cir. 1985) (noting that in the absence of stating specifically the weight accorded each item of evidence, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence). Stated otherwise, this Court cannot now engage in an administrative review that was not done in the first instance by the Commissioner via the ALJ. Martin, 748 F.2d at 1031. Indeed, as noted above, the Court's "limited review [of the record] precludes deciding the facts anew, making credibility determinations, or re-weighing the evidence." Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005) (*per curiam*) (citing Bloodsworth, 703 F.2d at 1239). Accordingly, this case should be remanded for proper consideration, in the first instance at the administrative level of review, of all of the medical opinions of record. Because the Court is recommending that this case be remanded, the remaining contention concerning Plaintiff's credibility need not be addressed.

## IV. CONCLUSION

For the reasons described above, the Court **REPORTS** and **RECOMMENDS**, pursuant to sentence four of 42 U.S.C. § 405(g), that the Commissioner's final decision be **REVERSED** and that the case be **REMANDED** for further consideration by the

Commissioner consistent with this opinion.

SO REPORTED and RECOMMENDED this 31st day of July, 2009, at Augusta, Georgia.

_W. Leon Barfield_
W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE